**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| JIMMY A. REED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:08-2451-MBS-JRM |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF WILLISTON AND | ) | |
| THOMAS A. RIVERS, MICHAEL | ) | |
| BENJAMIN, PHIL FREDERICK, | ) | **REPORT AND RECOMMENDATION** |
| MILTON WIDENER, SCOTTY | ) | |
| RICHARDSON, WANDA B. | ) | |
| MATTHEWS, SCOTT NEELY, | ) | |
| SEAN MOODY AND | ) | |
| CHRISTOPHER RIVERS, in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, Jimmy A. Reed ("Reed"), is the former Recreation Director for the Town of Williston ("Williston"). Reed filed this action on July 8, 2008 alleging that he was terminated by Williston because of his race in violation of Title VII and that the other named defendants, i.e., the "individual defendants," conspired to injure him. Defendants filed an answer on August 14, 2008. The individual defendants filed a motion to dismiss the civil conspiracy claim pursuant to Rule 12(c), Fed.R.Civ.P. Reed filed an opposition memorandum on October 7, 2008. The individual defendants filed their reply on October 17, 2008.

A Rule 12(c) motion is to be decided under the same standard as a motion brought under Rule 12(b)(6), Fed.R.Civ.P. Burbach Broadcasting Co. v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). To survive a motion under these rules, a plaintiff must not simply allege "labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." Bell Atl.Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007); Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989) (unsupported legal allegations or conclusory factual allegations devoid of any reference to actual events are insufficient). Plaintiff's allegations "must be enough to raise a right to relief above the speculative level,... on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, __ U.S. __, 127 S.Ct. at 1965. Reed alleges in his complaint:

> 1. The plaintiff is a citizen and resident of Barnwell County, South Carolina, residing at 40 Mill Street, Williston, South Carolina and is a black male.
>
> 2. The defendant, Town of Williston ("Town") is a municipal corporation and a political subdivision having offices, agents and employees in Barnwell County, with its principal offices in Williston, South Carolina.
>
> 3. The individual defendants, Thomas R. Rivers ("Rivers"), Michael Benjamin ("Benjamin"), Phil Frederick ("Frederick"), Milton Widener ("Widener"), Scotty Richardson ("Richardson"), Wanda B. Matthews ("Matthews"), Scott Neeley ("Neely"), Sean Moody ("Moody") and Christopher Rivers ("C. Rivers") are, upon information and belief, citizens and residents of Barnwell County, South Carolina who, at all times relevant hereto, were the mayor, councilmen, town administrator and other local residents of the Williston community who were highly critical of the plaintiff's performance as recreation director for the Town.
>
> \*           \*           \*
>
> 7. In 2005, the plaintiff, a black male, with coaching and teaching experience, was hired to be the part-time recreation director for the Town of Williston at a salary of $9,700 per year. He was the first black recreation director hired by the Town and the only black department head.
>
> 8. Upon his hiring, the plaintiff revitalized the youth athletic program within the city, bringing in basketball, softball and football teams in which all of the youth could participate. He also assembled a quality group of volunteer coaches to assist him with this program and under his leadership, the program flourished.
>
> 9. In 2006 and 2007, the plaintiff came under great criticism from certain members of the white community for his involvement of more black coaches and more black children into the athletic programs. Particularly criticism was leveled at him because some members of the white community with young daughters did not want their

daughters to play on segregated softball teams and preferred that there be all white teams and that black children be excluded.

10. The plaintiff took care of the athletic program for the youth of the Town on a race neutral basis and all of his sports were equal opportunity. In fact, the program had been previously criticized because it used federal grant money and there were no female sports teams for segregation reasons. The plaintiff initiated female sports teams and utilized equal opportunity principles.

11. Because of the plaintiff's insistence on allowing equal opportunity in his athletic program, many of the white citizens of the Town boycotted the program and would not allow their children to participate.

*      *      *

21. Over the last two years, some of the defendants have exhibited outright hostility toward the plaintiff's athletic programs for children and have met with one another, at some times involving all of the individual defendants and have schemed, planned and conspired to present false statements, false charges and to take collective action to force the plaintiff's removal as recreation director for the defendant Town. Such efforts have included galvanizing support from the white community of the Town while ignoring the black community and keeping it from participating in public discussions regarding the plaintiff's job performance, ignoring coaches, parents, youth and others who have spoken in the plaintiff's behalf and have been strongly supportive of the work that he has done.

22. These named defendants have also used their positions as mayor, town council members, the town administrator and members of the community with a hostile grudge against the plaintiff to come together and force him to be ousted from his job. The defendants who are officers or officials with the Town have acted outside the course and scope of their employment and have taken the actions referred to as a malicious and personal vendetta to accomplish their own improper ends. The actions of the named defendants as set forth herein constitute a combination of persons for the purpose of injuring the plaintiff and causing him special damages - a civil conspiracy for which the named defendants are liable individually for money damages.

23. As a direct and proximate result of the civil conspiracy as alleged herein, the plaintiff has sustained embarrassment, humiliation, mental anguish, loss of employment opportunities and the loss of his quality of life. The plaintiff is further entitled to an award of punitive damages for the intentional and bad faith actions of the named defendants in their individual capacities. The plaintiff is also entitled to such an award to punish and deter them from future wrongful conduct.

The individual defendants recognize that this Court recently ruled that an employee may maintain a civil conspiracy claim against other employees of a public entity in their individual capacities. Anthony v. South Carolina Department of Corrections, C/A No. 3:05-1636-MBS, 2007 WL 1032440 (D.S.C.). As discussed below, the individual defendants attempt to distinguish the present case from Anthony.

The Court summarized South Carolina law on the claim in Anthony.

> The tort of civil conspiracy contains three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) causing plaintiff special damage. *Kuznik v. Bees Ferry Assoc.,* 538 S.E.2d 15, 31 (S.C.Ct.App. 2000). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims." *Robinson v. Metts,* 86 F.Supp.2d 557, 563 (D.S.C. 1997) (citing *Todd v. S.C. Farm Bureau Mut.Ins.Co.,* 278 S.E.2d 607 (S.C. 1981)). Such a claim may exist "even though respondents committed no unlawful act and no unlawful means were used." *LaMotte v. Punch Line of Columbia, Inc.,* 370 S.E.2d 711 713 (S.C. 1988). To be actionable, "overt acts pursuant to the common design proximately cause damage to the party bringing the action." *Future Group, II v. Nation[ ]sbank*, 478 S.E.2d 45, 51 (S.C. 1996).

*Id.* at *6.

This Court, citing Lee v. Chesterfield Gen.Hosp., Inc., 344 S.E.2d 379, 383 (S.C. 1986), rejected defendants' intra-corporate conspiracy immunity doctrine defense because the individual defendants in Anthony were sued in their individual capacities. This Court also found that the plaintiff's status as an at-will employee did not preclude the civil conspiracy claim citing Angus v. Burroughs & Chapin Co., 628 S.E.2d 261, 262 (S.C. 2006) (hereinafter "Angus II"). In Angus II, the Supreme Court of South Carolina held that "an at-will employee may not maintain a civil action against her employer." The Anthony court reasoned that the civil conspiracy claim was not asserted against the plaintiff's employer, but two other employees in their individual capacities. Anthony, at *7.

4

The individual defendants argue at length that the present case may be distinguished from Anthony because this Court did not consider the review of Angus I by the South Carolina Supreme Court in Angus II as it was not cited in defendants' brief. The individual defendants focus on the status of the plaintiff in Angus I and II as "an at-will public official."[1] Angus II at 170.

The South Carolina Court of Appeals summarized the development of the case in Angus I:

> Linda Angus began employment with Horry County as its county administrator and chief operating officer on June 3, 1996. Her employment contract stated that she was "employed at the will" of the Horry County Council. The contract stipulated that Angus was to be given 365 days notice or 365 days severance pay in the event of a termination. On June 22, 1999, Horry County terminated her employment. Pursuant to the terms of the agreement, Angus was paid for 365 days and was extended the appropriate benefits.
>
> On January 14, 2000, Angus filed a complaint against Burroughs & Chapin Co., Doug Wendel, Pat Dowling, Myrtle Beach Herald, Deborah Johnson, Chandler Prosser, Marvin Heyd, Chandler Brigham, and Terry Cooper ("the respondents"). Wendel and Dowling were employees of Burroughs & Chapin; Johnson was an employee of the Myrtle Beach Herald; Prosser, Heyd, Brigham, and Cooper were all Horry County Council members. Angus alleged numerous causes of action, including tortious interference with contractual relations, defamation, civil conspiracy, and unfair trade practices, all arising from the termination of her employment by Horry County. Specifically, Angus alleged that the respondents "conspired with numerous persons...to see that Angus was terminated from her employment as Horry County Administrator." And she alleged that the respondents did this to gain financial advantage and to avoid regulatory requirements.
>
> After orders dismissing the causes of action for intentional interference with contractual relations, defamation, and unfair trade practices, the only remaining cause of action was for civil conspiracy. In an order dated November 28, 2001, the circuit court granted summary judgment to all Respondents as to the civil conspiracy claims.

The Court of Appeals affirmed the trial court's grant of summary judgment as to the council members based on Ross v. Life Ins. Co. of Va., 259 S.E.2d 814 (1979) which held that (1) an

---

[1] The individual defendants assert that Reed was an at-will public official under Williston's ordinances. Reed argues that he was not a public official. The record is insufficient at this point to resolve this issue.

5

employer can terminate an at-will employee for any reason, and (2) "an at-will employee cannot maintain an action against a former employer for civil conspiracy that resulted in the employee's termination." Angus I, at 503, citing Mills v. Leath, 709 F.Supp. 671, 675 (D.S.C. 1988). The Court of Appeals also rejected Angus' argument that the council members were not entitled to summary judgment because they were sued in their individual capacities, holding that "the council members acted within their authority when they fired Angus and they cannot be sued for doing what they had a right to do. *See* Antley v. Shepherd, 340 S.C. 541, 550, 532 S.E.2d 294, 298 (Ct.App. 2000) (holding that a county official was immune from liability in his individual capacity since that official acted within his authority in firing an employee who was serving at the will of that official), *aff'd. as modified,* Antley v. Shepherd, 349 S.C. 600, 564 S.E.2d 116 (2000)."

However, the Court of Appeals reversed the holding of the trial court and held that Angus could maintain her action for civil conspiracy against the Myrtle Beach Herald and the Burroughs & Chapin Company and their named employees (the "Newspaper" and "the Developer"). The Court of Appeals held that "(t)he at-will employment doctrine does not extend its protection to third parties." Angus I at 504.

The Newspaper and the Developer obtained discretionary review by the South Carolina Supreme Court. The Supreme Court reversed the Court of Appeals. In doing so, the Supreme Court made a specific finding that Angus was "an at-will public official" based on her contract and S.C.Code Ann. § 4-9-610, *et. seq.* Angus II, at 170, n. 3. In essence in Angus II, the Supreme Court held that the "critical factor" with respect to Angus' claim against the non-governmental third parties (i.e., the Newspaper and the Developer) was Angus' status as an "at-will public official." The Supreme Court reasoned that since a public official is ultimately "answerable to the public [ ]

6

members of the public are not third-party interlopers." *Id.* In other words, because Angus was a public official the Newspaper and the Developer stood in the same shoes as the county council members sued in their individual capacities, and for this reason Ross was equally applicable to them. The holding of Angus II is that the third parties were entitled to summary judgment.

The undersigned finds the argument of the individual defendants in the present case that the parties in Anthony failed to cite Angus II for this Court's consideration and never argued that Anthony was a "public official," to be unpersuasive. (Def.Mot, p. 7).  Review of the record in Anthony shows that the Defendants cited Angus I on page 33 of their memorandum in support of their motion for summary judgment.  Further, this Court specifically cited Angus II in its decision. Anthony at *7.  Thus this Court appears to have fully considered these decisions.  This Court made a fact-based analysis and found that "material facts as to whether a civil conspiracy to injure Plaintiff existed," and denied summary judgment.

Therefore, the undersigned concludes that the motion of the individual defendants to dismiss them pursuant to Federal Rule 12(c) should be **denied**.

                                      Joseph R. McCrorey
                                      United States Magistrate Judge

Columbia, South Carolina

January 27, 2009

7